# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEPHANIE D. CHAVEZ,

      Plaintiff,

v.                                         CV 08-1103 WPL

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## ORDER

Stephanie Chavez applied for supplemental security income and disability insurance benefits. (Administrative Record (AR) 13.)  After her applications were denied at all administrative levels, she brought this proceeding for judicial review.  The case is before me now on Chavez's motion to reverse and remand, a response filed by the Commissioner of Social Security, and Chavez's reply. (Doc. 22, 27, 28.)  For the reasons explained below, I will grant the motion.

### FACTUAL BACKGROUND

### *Mental Issues*

Chavez has a history of substance abuse.  In October 2004, she sought treatment for this problem.  At that time, she was diagnosed with cocaine and alcohol dependence, anxiety, and depression. (AR 160.) Chavez stated that she had been depressed and anxious in the past, but these conditions intensified in August 2004, when she tried to quit using cocaine. (AR 168.) She relapsed over the holidays and lost contact with her treatment providers sometime after the end of January 2005. (AR 159.)  She underwent cocaine detoxification again in May 2005. (AR 183.)

In October 2005, Chavez saw her regular medical provider, a certified nurse practitioner named Melissa Parra.  Chavez complained of depression that had lasted at least several months. (AR 199.)  She admitted that she was addicted to crack cocaine, but claimed that she had been sober for two weeks.  Parra prescribed medication to treat Chavez's depression.  (*Id.*)

In January 2006, Chavez saw Parra for a sinus infection.  A record of this medical visit states that Chavez seemed "rather frazzled" and was talking rapidly.  (AR 197.)  Parra noted that it was hard to tell whether Chavez was using drugs.  Chavez assured her that she was not using drugs, but that she felt "very frazzled coming off of them."  (AR 197-98.)  She had been attending Narcotics Anonymous meetings two times a week and was starting counseling.  (AR 197.)

On February 7, 2006, Chavez saw Parra for a physical examination.  According to a record of that encounter, she told Parra that she had been sober for three months and she agreed to drug testing.  (AR 195.)  Parra described Chavez as "very agitated" and "nervous" and noted that she was "trembling" and "talking rather rapidly."  (*Id.*)  The drug test was negative for opiates, cocaine, amphetamines, and barbituates, but was positive for cannabis.  (AR 206.)

According to an April 2006 medical record, Chavez told Parra that she had used crystal methamphetamine and crack cocaine frequently for the last couple of years, but that she had been "clean" for a few weeks.  (AR 192.)  Chavez also admitted to drinking excessively—sometimes between four and six alcoholic beverages per day.  (*Id.*)

In August 2006, Chavez saw Parra for bronchitis.  She told Parra that she had not done any drugs "in the past several weeks."  (AR 242.)  Parra noted that Chavez had a history of depression, but that it was currently stable on the medication.  (*Id.*)

Chavez submitted to two consultative psychological examinations.  The first was performed on January 6, 2006 by Louis Wynne, Ph.D.  (AR 142.)  Wynne described Chavez as "listless,

2

irritable," and "depressed." (*Id.*)  He found no evidence of evasion or confusion and stated that "[h]er sensorium . . . appeared clear, and there was no indication of any drugs." (*Id.*)  Wynne detailed deficiencies in Chavez's mental functioning: she could not copy a pair of intersecting pentagons, perform simple mental arithmetic, or spell a common five-letter word backwards. (AR 143.)  She had a limited fund of information and her "ability to abstract" and her short-term memory were impaired.  However, her judgment was unimpaired and she could carry out a written three-part set of instructions.  Wynne estimated her intelligence to be below average. (*Id.*)

Although Wynne believed that Chavez's ability to present a plausible personal history was impaired, he noted that she reported cutting her wrists at the age of nineteen and taking an overdose of pills at the age of twenty-two, following her brother's death. (*Id.*)  She also claimed that her in-laws beat her up to the point of unconsciousness when she was twenty. (*Id.*)

According to Wynne, Chavez "said that she drinks 'a lot': three shots and one beer a day." (AR 144.)  She denied that she was currently using drugs. (*Id.*)

Wynne thought that Chavez had cooperated fully with his examination and he found no reason to suspect malingering.  He concluded that she could read and understand basic written instructions, but her concentration and ability to persist at simple work tasks was "at least moderately impaired." (*Id.*)  She could not interact well with others and would have considerable difficulty adapting to changes in a workplace. (*Id.*)  However, Wynne did not concur with the diagnoses of depression and anxiety and he "believe[d] that her psychiatric symptoms are indicative of chronic substance abuse." (*Id.*)

Wynne's DSM-IV diagnoses were alcohol and polysubstance abuse and dependence.  He assigned Chavez a global assessment of functioning score (GAF) of 42, which indicates serious symptoms or any serious impairment in social or occupational functioning. *See* AMERICAN

3

PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000).  Wynne also noted, "R/O [rule out] borderline intellectual functioning" (AR 144), which suggests that further testing needed to be done before borderline intellectual functioning could be ruled out.  *See Hawkins v. Chater*, 113 F.3d 1162, 1165-66 (10th Cir. 1997).

After Wynne's report was received by the Social Security Administration, an Administration record notes that it "would be wise" to order a Wechsler Adult Intelligence Scale (WAIS) test.  (AR 85.)  Thereafter, Chavez's second psychological consultative examination was performed on February 9, 2006 by Eligio Padilla, Ph.D.  (AR 229.)  In addition to administering a WAIS test, Padilla conducted a mental status examination and reviewed Chavez's records, including Wynne's report.  (*Id.*)  Padilla stated that Wynne suggested that Chavez be cognitively evaluated because he suspected borderline intellectual functioning.  (AR 230.)

Padilla also stated that the personal history Chavez reported to him was consistent with Wynne's summary with one exception—she denied that she was currently drinking a lot.  (AR 229-30.)  Chavez told Padilla that she had been sober and drug free for three months.  (AR 230.)

During the mental status examination, Chavez's attention, concentration, and memory "seemed compromised by low cognitive functioning and depressed mood," although she was oriented to person, place, time, and situation.  (*Id.*)  "Executive functions, such as her ability to think abstractly, reality testing, decision making judgment [sic] and intelligence all seemed compromised by low cognitive functioning and her depressed mood and blunted affect."  (*Id.*)

During administration of the WAIS test, Chavez appeared to do her best.  (*Id.*)  Even so, the test showed her to be "functioning at the mentally deficient range of cognitive abilities."  (AR 135.)

4

Padilla's DSM-IV diagnoses were polysubstance dependence and depressive disorder.  He assigned a GAF of 40, similar to Wynne.  (AR 136.)  He hypothesized that Chavez's depression and substance abuse, particularly the abuse of crack cocaine, could have depressed her performance on the IQ test.  (AR 135.)  He stated, "Dr. Wynne was of the opinion that her psychiatric symptoms could be understood directly as consequences or correlates of her substance abuse, but the cognitive, affective and behavioral symptoms of depression have persisted despite three months of sobriety, the use of psychotropic medication and her involvement in NA and in counseling."  (AR 136.)

Padilla concluded that Chavez's capacity to understand and remember very short and simple instructions was moderately limited.  (*Id.*)  He concluded that the following capacities were markedly limited: understanding and remembering detailed or complex instructions; carrying out instructions; attending and concentrating; working without supervision; interacting with others; and adapting to changes in the workplace.  (AR 136-37.)  Padilla further concluded that Chavez's ability to function in a work setting was affected by her substance abuse but that this ability would not improve significantly if the substance abuse stopped.  As the basis for this conclusion, Padilla wrote: "Ms. Chavez admitted to a significant history of substance abuse, including addiction, detoxification and treatment, but she would have problems at a working [sic] setting even if she were consistently sober because of her extremely low Performance and Full Scale IQs, very low Verbal IQ, extremely low Processing Speed Index, very low Perceptual/Organizational, Working Memory, and Verbal Comprehension indices and depressed mood."  (AR 137.)

### *Physical Issues*

Chavez has asthma.  An August 2004 medical record states that this condition was "under pretty good control."  (AR 151.)  In January 2005, Chavez went to the emergency room because of

an asthma flare-up.  (AR 150.)  An April 2006 medical record states that her asthma was under "[f]air control."  (AR 193.)

Chavez has also suffered from hyperthyroidism due to Graves disease.  (AR 246-48.)[1]  In August 2006, she was treated with radioactive iodine.  This resulted in permanent hypothyroidism.  (AR 250, 256, 261.)  In January 2007, she reported to a doctor that she was fatigued.  (AR 262.)  The doctor opined that she could not work at that time because of the hypothyroidism, but that once her "thyroid level" was normalized, she should be able to return to work.  (AR 231, 233.)

### *Administrative Hearing*

A hearing before an administrative law judge (ALJ) was held on November 19, 2007.  (AR 274.)  Chavez appeared for the hearing, but was unable to offer any meaningful testimony because she was incoherent.  (*See* AR 277-80, 298-99.)  Chavez's daughter, Shantelle Garcia, testified in her place.  She stated that her mother cannot be left alone and that she takes care of her mother.  (AR 280.)  Chavez had "gone pretty much downhill" since 2005; "all she does is sleep and cry."  (AR 286, 290.)  But Garcia testified that Chavez was not usually as "bad" as she was at the hearing.  (AR 296.)

### STANDARD OF REVIEW

In reviewing the Commissioner's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  Substantial evidence is such relevant evidence

---

[1] The same blood test that revealed cannabis use in February 2006 also revealed this thyroid condition.  (AR 191, 246, 249.)  Thus, Chavez was apparently suffering from Graves disease during her visits to Parra in January and February 2006 and during both consultative psychological examinations.  Graves disease is the most common cause of hyperthyroidism.  Its symptoms include anxiety, nervousness, difficulty concentrating, and fatigue.  *See* http://www.nlm.nih.gov/medlineplus/ency/article/000358.htm.

as a reasonable mind might accept as adequate to support a conclusion. *Id.* A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Id.* I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *See id.*

### SEQUENTIAL EVALUATION PROCESS

The Social Security Administration has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps, the claimant must show that she is not working at a substantial gainful activity, that she has an impairment that is severe enough to significantly limit her ability to do basic work activities, and either that the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or that she is unable to perform the work she has done in the past. At the fifth step, the Commissioner must show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

The Contract with America Advancement Act of 1996 (CAAA) modified the sequential evaluation process for cases in which the claimant suffers from alcoholism or drug addiction. Pursuant to the CAAA, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Salazar v. Barnhart*, 468 F.3d 615, 622-23 (10th Cir. 2006). A finding of disability is a condition precedent to application of this statute. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). Thus, the ALJ must first complete the five-step sequential evaluation process. If that process results in a finding of disability,

the ALJ must then determine whether the claimant would still be found disabled if she stopped abusing alcohol or drugs.  *See id.*  "[T]he ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if plaintiff stopped using alcohol [or drugs], and then determine whether any or all of plaintiff's remaining limitations would be disabling."  *Id.*  If the claimant would still be found disabled if she stopped using alcohol or drugs, substance abuse is not a contributing factor material to the finding of disability.  Conversely, if the claimant would not be found disabled if she stopped using alcohol or drugs, substance abuse is a contributing factor material to the finding of disability.  *See id.* at 1214-15.

Although the claimant has the burden of proving that alcoholism or drug addiction is not a contributing factor material to the determination of disability, the ALJ retains the duty to develop a full and fair record under the non-adversarial system that applies to social security cases. *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003).  As the Eighth Circuit has explained, "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow.  In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant]."  *Id.* (internal citations omitted); *see also* FRANK S. BLOCH, BLOCH ON SOCIAL SECURITY § 3.39 ("[I]f the evidence is insufficient to establish that alcoholism or drug addiction is a contributing factor material to an otherwise-qualifying disability, benefits must be awarded.").

Moreover, when a claimant suffers from another mental disorder besides substance addiction, the ALJ must find that substance addiction is not material to the claimant's disability unless the limitations caused by substance addiction can be separated from those caused by the other mental disorder.  *Salazar*, 468 F.3d at 623.  A medical expert must be able to project what

8

limitations would remain if the claimant stopped using drugs or alcohol. *Id.* "[T]he key factor the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol." *Drapeau*, 255 F.3d at 1214.

### ALJ'S DECISION

The ALJ first found that Chavez had not engaged in substantial gainful activity since her alleged onset date of February 1, 2005. (AR 16.) At step two of the sequential evaluation, he found that her substance abuse and mood disorder are severe impairments. (*Id.*) The ALJ acknowledged that Chavez has a history of asthma, but found that the asthma is well controlled with medication and that there was no evidence that this condition causes any functional limitations. Likewise, the ALJ noted that Chavez had been diagnosed with Graves disease and hypothyroidism, but concluded that the hypothyroidism should be under control with the proper use of medication. (*Id.*) At step three, the ALJ found that Chavez's impairments meet the requirements of listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). (*Id.*)

Within his discussion of step three, the ALJ addressed the reports prepared by Wynne and Padilla. (AR 17.) He summarized Wynne's impressions and noted that Padilla found that Chavez has several marked limitations. The ALJ then stated, "However, Dr. Padilla, agreed with Dr. Wynne's opinion that the claimant's substance abuse issues clearly impacted on her mental status. . . . . Importantly, the claimant underwent blood studies on February 9, 2006 which was [sic] positive for cannabis, which was contradictory to her assertion that she was drug free . . . ." (*Id.*) The ALJ continued by pointing out that Chavez admitted to Parra in April 2006 "that she was actively using cocaine and crystal methamphetamine. However, she noted she was clean for a few weeks." (AR 18.) He further stated that Chavez claimed to be drug-free for several weeks in

August 2006 and that her depression was under control at that time. (*Id.*) The ALJ ended his step three discussion by stating:

> As for the opinion evidence, the state agency physician who performed a psychological review of the claimant indicated that the claimant suffered from mild restrictions of activities of daily living with marked difficulties in maintaining social functioning and maintaining concentration, persistence or pace (Exhibit 1F, page 59). The consultative examiner also indicated that drug and alcohol abuse was material and, indeed, impacting the claimant's mental status (Exhibit 1F, page 57). The undersigned grants preponderant weight to this opinion which is fully supported by the evidence.

(*Id.*)[2]

Having found that Chavez was disabled at step three, the ALJ proceeded to determine whether she would still be disabled if her substance abuse stopped. He determined that she would still have a severe impairment or combination of impairments, but those impairments would not meet any listing. In particular, he stated:

> With regard to concentration, persistence or pace, the claimant would have moderate difficulties if the substance use was stopped. The claimant has some evidence of decreased cognitive abilities and concentration as noted in her Wechsler adult intelligence scale testing. Thus, giving the claimant every possible reasonable benefit of the doubt, it is clear that she has moderate difficulties with concentration, persistence or pace and as a result, is limited to jobs involving simple and routine tasks.

(AR 19.)

---

[2] Because the ALJ failed to provide a detailed exhibit list, it is difficult to locate the exhibits cited in his decision within the administrative record. In the first sentence of the paragraph above, the ALJ was apparently referring to the psychiatric review technique form completed by Scott Walker, M.D. (*See* AR 215-27.) In the second sentence, the ALJ referred to the consultative examiner in the singular, although there were actually two consultative examiners—Wynne and Padilla. Padilla's report cannot be read to support a finding that Chavez's substance abuse was material. Wynne did not expressly state that substance abuse was material, but he stated that he did not concur with the diagnoses of depression and anxiety and that he believed Chavez's psychiatric symptoms were indicative of chronic substance abuse. (AR 144.) The second sentence probably refers to this finding. However, the final page of Walker's psychiatric review technique form includes an express materiality finding. (AR 227.) It is possible that the ALJ was referring to this page.

The ALJ then concluded, at step four, that Chavez would have a residual functional capacity (RFC) to perform a full range of work at all exertional levels, at jobs limited to simple and routine tasks.  (*Id.*)  Within his discussion of step four, the ALJ summarized the testimony at the hearing. He recalled that Chavez was "noncommunicative" at the hearing and he summarized her daughter's testimony.  (AR 20.)  He found that Chavez's inability to testify was not supported by any of the medical evidence.  (AR 21.)  The ALJ also addressed Chavez's thyroid conditions in his discussion of step four and indicated that her hypothyroidism should not limit her RFC as long as she receives proper care for the condition.  (AR 20-21.)  In his final step four finding, the ALJ determined that Chavez could not return to her past relevant work as a waitress or secretary because these jobs are semi-skilled and Chavez's current RFC limits her to unskilled positions.  (AR 21.)

At step five, the ALJ stated that if Chavez's substance abuse stopped, her ability to perform work at all exertional levels would be compromised by nonexertional limitations, but those limitations would have little or no effect on the occupational base of unskilled work at all exertional levels.  Accordingly, the Medical-Vocational Guidelines (or "grids") suggested a finding of "not disabled."  (AR 22.)

### FAILURE TO FIND THAT GRAVES DISEASE WAS SEVERE

Chavez argues that the ALJ erred by failing to find that the medical evidence regarding Graves disease satisfies the de minimis standard for a severe impairment at step two.  This argument fails because the ALJ found that a couple of Chavez's other impairments are severe.  The Tenth Circuit recently held that "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Dray v. Astrue*, No. 09-7058, 2009 WL 3821522, at *1 (10th Cir. Nov. 17, 2009) (unpublished).  Although *Dray* is an unpublished decision, the case cites *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir.

11

2007), in which the Tenth Circuit rejected the argument that the ALJ erred in failing to find certain impairments to be severe.  In *Oldham*, the court stated, "The ALJ . . . made an explicit finding that Ms. Oldham suffered from severe impairments. That was all the ALJ was required to do in that regard."  509 F.3d at 1256.

### FINDING THAT SUBSTANCE ABUSE WAS MATERIAL

Chavez contends that substantial evidence does not support the ALJ's finding that substance abuse is material to her disability.  The Commissioner argues that the ALJ's finding is supported by Wynne's report and by the August 2006 medical report.

### *Wynne's Report*

Wynne opined that Chavez's symptoms were indicative of chronic substance abuse, rather than depression and anxiety.  The Commissioner points out that although Padilla disagreed with Wynne, Padilla mistakenly believed Chavez's claim that she had been sober for three months when, in fact, a drug test shows that she had not completely abstained from drugs during that three-month period.

The ALJ also seemed to rely on Wynne's report and emphasized the positive drug test result. However, the wording of the ALJ's decision leaves unclear exactly why he favored Wynne's report over Padilla's.  The decision's only direct discussion of Padilla's report immediately follows the discussion of Wynne's report.  The ALJ stated:

> The claimant underwent yet another consultative psychological evaluation on February 9, 2006 with Dr. Padilla.  The claimant was ultimately diagnosed with a depressive disorder, cocaine dependence and polysubstance dependence with marked limitations in several spheres of function.  However, Dr. Padilla, agreed with Dr. Wynne's opinion that the claimant's substance abuse issues clearly impacted on her mental status [citation omitted].  Importantly, the claimant underwent blood studies on February 9, 2006 which was [sic] positive for cannabis, which was contradictory to her assertion that she was drug free [citation omitted].

(AR 17.)   Later, the ALJ noted that "the consultative examiners indicated that the claimant's condition was substantially affected by her polysubstance abuse."  (AR 18.)  Actually, Padilla's report shows a "Yes" answer to the question "[I]s her ability to function in a work setting affected by the use of these substances?"  But it also shows a "No" answer to the question "[W]ould the examiner expect her ability to work to improve significantly if the substance abuse stopped?"  (AR 137.)

It is strange that the ALJ stated that Padilla agreed with Wynne that Chavez's substance abuse impacted her mental status, but failed to mention Padilla's ultimate conclusion that her ability to work would not significantly improve even if she stopped abusing drugs or alcohol.  Moreover, in making his materiality finding, the ALJ noted that the consultative "examiner," not examiners, indicated that drug and alcohol abuse were material and impacted the claimant's mental status.  He further found that "this opinion" was fully supported by the evidence, even though it was not supported by Padilla's report.  (*See* AR 18.)

The ALJ never confronted Padilla's conclusion that Chavez's ability to work would not significantly improve if she stopped abusing drugs or alcohol.  He did not explain why he rejected Padilla's conclusion or found it less persuasive than Wynne's conclusion.  This was error because Padilla's conclusion is contrary to the ALJ's finding that drug and alcohol abuse is material to Chavez's disability.  *See  Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[T]he ALJ also must discuss . . . significantly probative evidence he rejects.").  It is not clear why the ALJ failed to address these issues.  Based on some of the language in the decision, it is possible that the ALJ simply misread Padilla's report as being completely in line with Wynne's.  Such a misreading would support a remand so the ALJ may conduct a proper evaluation of the evidence.

13

Since the ALJ mentioned the positive drug test within his discussion of Padilla's report, it is also possible that the ALJ discounted Padilla's opinion because of the test result. This possibility also warrants a remand. The ALJ stated that Chavez tested positive for cannabis on the same day that she was evaluated by Padilla (February 9, 2006), but the positive drug test actually occurred two days earlier (February 7, 2006). Thus, the ALJ may have mistakenly believed that Chavez was under the influence of cannabis when she underwent the WAIS test.

In fact, there is no evidence that Chavez was under the influence of any substance during either of the consultative examinations. Wynne expressly stated that Chavez did not seem confused and there was no indication of any drug usage. He nevertheless detailed several deficiencies in Chavez's mental functioning. Although Wynne rejected the diagnoses of depression and anxiety, he suggested that borderline intellectual functioning needed to be ruled out. In other words, Wynne did not reach a final conclusion regarding Chavez's intellectual abilities. Padilla did reach a conclusion regarding these abilities after administering the WAIS intelligence test. That test showed her to be functioning at the mentally deficient range of cognitive abilities. Based on the test results, Padilla concluded that Chavez's ability to function in a work setting would not improve significantly if her substance abuse stopped.[3]

_____

[3] Although the ALJ did not adopt Padilla's conclusion related to materiality, he did cite the WAIS test results favorably in making his RFC finding. He stated that Chavez "has some evidence of decreased cognitive abilities and concentration as noted in her Wechsler adult intelligence scale testing." (AR 19.) Purporting to give her the benefit of the doubt, the ALJ found that Chavez would have moderate difficulties in concentration, persistence, or pace if her substance use was stopped. After conducting the WAIS test, Padilla concluded that Chavez has a moderately limited capacity to understand and remember very short and simple instructions and a markedly limited capacity to understand and remember detailed or complex instructions, carry out instructions, attend and concentrate, work without supervision, interact with others, and adapt to changes in the workplace. The ALJ did not indicate why he singled out concentration, persistence, and pace from this litany of impairments or how he decided that this impairment was only moderate as opposed to marked.

14

### *August 2006 Medical Report*

According to the August 2006 medical report, Chavez told Parra that she had not done any drugs "in the past several weeks" and Parra stated that Chavez's depression was currently stable on medication.  (AR 242.)  Citing this record, the Commissioner refers to August 2006 as "an actual period of sobriety lasting several weeks" and suggests that it indicates that her depression was substance induced.  (Doc. 27 at 15.)  A review of Chavez's medical records shows that she typically confessed her addictions to medical providers but claimed that she had been sober or at least drug-free for a short period of time.  The Commissioner does not explain why Chavez's August 2006 claim of sobriety was any more credible than any of her other claims of sobriety.  The ALJ was similarly inconsistent.  He found it "noteworthy that the claimant was not always forthcoming with her physicians indicating that she was drug-free."  (AR 18.)  He continued, "For example February 2006 blood test revealed that the claimant was using marijuana inconsistent with her assertion to the contrary [sic].  In any event, during this period when the claimant was drug-free she continued to be depressed but her condition was clearly improved."  (*Id.*)[4]

In October 2004, Chavez told her drug-treatment providers that her depression and anxiety intensified when she tried to stop using cocaine.  In October 2005, Chavez complained to Parra about her depression even though she claimed that she had been sober for two weeks.  This was when Parra first prescribed medication to treat the depression.  Neither the Commissioner nor the ALJ has explained why these reports are less probative than the August 2006 report.

---

[4] In these two sentences, the ALJ seems to simultaneously reject and accept Chavez's claim of sobriety.  It is possible that the ALJ meant to refer to the August 2006 period of alleged sobriety.

15

Additionally, the August 2006 medical report only addresses Chavez's depression. It does not address the intellectual deficiencies found by Wynne and Padilla. The ALJ did not cite any evidence that these deficiencies improved during a period of sobriety.

### STEP FOUR AND STEP FIVE FINDINGS

Even if a remand to reconsider the materiality issue could be avoided, a remand would still be necessary to reconsider steps four and five in the sequential evaluation.

First, Chavez correctly argues that the ALJ's RFC finding is contrary to law. He found that Chavez "has moderate difficulties with concentration, persistence or pace and as a result, is limited to jobs involving simple and routine tasks." (AR 19.) Chavez relies on *Wiederholt v. Barnhart*, 121 F. App'x 833 (10th Cir. 2005). In *Wiederholt*, the ALJ found that the claimant had an RFC limited to "simple, unskilled job tasks." 121 F. App'x at 839. But the ALJ also found that the claimant had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. The ALJ's hypothetical question to the vocational expert (VE) included only the limitation of "simple, unskilled" tasks. *Id.* Based on this question, the VE opined that the claimant could do unskilled work. The ALJ relied on the VE's opinion in denying benefits. *Id.* The Tenth Circuit held that "[t]he relatively broad, unspecified nature of the description 'simple' and 'unskilled'" did not adequately incorporate the ALJ's other specific findings regarding the claimant's mental impairments. *Id.* "Because the ALJ omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed." *Id.* Accordingly, the VE's opinion did not constitute substantial evidence to support the ALJ's decision. *Id.*; *accord Smith v. Barnhart*, 172 F. App'x 795, 800 (10th Cir. 2006) (holding that a hypothetical question was flawed where it stated that the claimant could understand and perform

16

simple tasks but did not mention the claimant's moderate limitations in concentration, persistence, or pace); *see also Chambers v. Barnhart*, No. 03-7007, 2003 WL 22512073, at *3 n.2 (10th Cir. Nov. 6, 2003) (recognizing "that restricting a claimant to simple tasks can address a deficiency in concentration, persistence and pace *if* that deficiency *was found to apply only to complex tasks*"). *But see Nixon  v. Barnhart*, 49 F. App'x 254, 256 (10th Cir. 2002) ("The ALJ's RFC assessment included the limitation that it was impossible for Ms. Nixon to perform tasks requiring understanding, remembering, or carrying out more than simple instructions.  These limitations in the ALJ's RFC assessment adequately account for Ms. Nixon's deficiencies in concentration, persistence, and pace.").

Although there does not appear to be a published case in this circuit involving this issue, the Third and Eighth Circuits have reached similar conclusions in published cases.  The Third Circuit considered a hypothetical question that limited the claimant to "no more than simple one or two-step tasks."  *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004).  The court held that this limitation did not take into account the ALJ's finding that the claimant often suffered from deficiencies in concentration, persistence, or pace.  *Id.*  Specifically regarding the deficiency in pace, the court observed that "[m]any employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time."  *Id.*

The Eighth Circuit considered a hypothetical question that described a claimant as having a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, and a capacity for simple jobs. *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996).  The court held that the hypothetical question was insufficient because it did not mention the claimant's deficiencies in concentration,

17

persistence, or pace. *Id.* The court rejected the Commissioner's argument that the question was sufficient because it limited the claimant to simple jobs. The court noted that the vocational expert testified that the claimant's concentration and persistence problems related to basic work habits needed to maintain employment and that a moderate deficiency in these areas would cause problems on a daily basis regardless of the skills required for a job. *Id.*; *see also Bowers v. Astrue*, 271 F. App'x 731, 733 (10th Cir. 2008) (citing *Newton* for the proposition that "[s]imple work . . . can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention"). A district court has also reached a similar result. *See Benton v. Comm'r of Soc. Sec.*, 511 F. Supp. 2d 842, 849 (E.D. Mich. 2007) ("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain concentration, persistence, and pace, she is able to perform simple, routine, repetitive work. However, the limitations included in the hypothetical question and the VE's testimony regarding the effect a lack of concentration has on the jobs mentioned was insufficient to suitably accommodate Plaintiff's concentration limitations.").

The Commissioner cites several cases to support the ALJ's approach, but those cases do not address the issue presented here. *See Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008); *Salazar v. Astrue*, 224 F. App'x 839, 841 (10th Cir. 2007); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

Based on the authority discussed above, the ALJ erred in assuming that Chavez's moderate difficulties with concentration, persistence, or pace can be accounted for by limiting her to jobs involving simple and routine tasks. These cases also emphasize the importance of testimony from a vocational expert. Here, the ALJ did not consult a vocational expert, but instead assumed that Chavez's nonexertional limitations have little or no effect on the occupational base. He therefore found that a finding of not disabled was appropriate, using the grids as a framework.

The grids should not be applied conclusively unless the claimant can perform the full range of work required of a particular category on a daily basis. *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Resort to the grids is particularly inappropriate when the claimant has nonexertional limitations such as mental impairments. *Id.* When nonexertional impairments are present, the grids may not be applied mechanically but may serve only as a framework to aid in the determination of whether sufficient jobs remain within a claimant's RFC range. *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. *Ray v. Bowen*, 865 F.2d 222, 226 (10th Cir. 1989). If an ALJ finds that a nonexertional impairment has a negligible effect on the range of jobs available, he "must back such a finding of negligible effect with the evidence to substantiate it." *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. 1987).

In a case somewhat similar to this one, the ALJ found that the claimant had a nonexertional mental impairment. *See Lopez v. Barnhart*, 78 F. App'x 675, 679 (10th Cir. 2003). "Consistent with the evidence that the claimant has marked limitations in his abilities to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public, the ALJ determined that claimant was restricted to light work that was simple and non-public." *Id.* Although the ALJ limited the claimant to simple, non-public work, he found that these restrictions did not significantly compromise his ability to perform light work. *Id.* However, the ALJ's finding that the claimant could perform most light work jobs was not supported by testimony from a vocational expert or any other source. The Tenth Circuit therefore remanded the case for the purpose of obtaining vocational expert testimony or other additional evidence of the effect of the claimant's nonexertional limitations on his ability to do substantially the full range of light work. *Id.*

Likewise, the ALJ found in this case that Chavez's nonexertional limitations have little or no effect on the occupational base of unskilled work at all exertional levels, but he cited no evidence to back up this finding.   This was error.

**CONCLUSION**

For the reasons stated above, the motion to reverse and remand is granted, and this matter is remanded for proceedings consistent with this order.[5]

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

---

[5] Having determined that the matter should be remanded for a redetermination of materiality, as well as for errors at steps four and five, I find it unnecessary to address Chavez's remaining claims of error.